UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| JOSEPH A. WEIR | : | DOCKET NO. 18-cv-1276 |
| REG. # 15526-032 | | SECTION P |
| VERSUS | : | UNASSIGNED DISTRICT JUDGE |
| R. MYERS, ET AL. | : | MAGISTRATE JUDGE KAY |

**MEMORANDUM ORDER**

Before the court is a civil rights complaint filed pursuant to *Bivens v. Six Unknown Named Agents*, 91 S.Ct. 1999 (1971), by plaintiff Joseph A. Weir, who is proceeding pro se and in forma pauperis in this matter. Weir is an inmate in the custody of the Bureau of Prisons and is currently incarcerated at the Federal Correctional Institution at Oakdale, Louisiana ("FCIO"), where the events giving rise to his claims occurred. This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court.

**I.**
**BACKGROUND**

Weir's complaint arises from an injury he sustained to his foot while at FCIO, and the medical care he received thereafter. Doc. 6, att. 1. He makes the following allegations: On the night of December 2, 2017, he slipped while attempting to climb a stationary desk in order to reach his top bunk. *Id.* at 3. He explained the injury to three corrections officers who came to his cell and asked for medical assistance, but was not taken to health services until the next morning. A nurse assured Weir that he would order X-rays for the following day, but when Weir followed up

with Nurse Moody the following day, she only stated that she would "have to see about X-rays." *Id.* at 4.

Weir did not receive an X-ray until December 15. *Id.* at 3, 5. The X-ray showed a fracture to Weir's fifth metatarsal in his right foot, and he was given a medical boot and sent back to his cell. *Id.* at 3. Two weeks later, he saw an orthopedic surgeon who took X-rays and recommended surgery. Doc. 6, p. 3; doc. 6, att. 1, pp. 3–4. On January 5, 2018, however, Weir received another X-ray at FCIO and was then told by FCIO physician Joel Alexandre that surgery was not warranted and that the foot would "heal fine on [its] own." Doc. 6, att. 1, p. 4. On January 24, however, a nurse told him that "some things have changed and we're now putting you in for surgery." *Id.* The surgery was approved by the regional office on February 1, but then cancelled without explanation by medical staff shortly thereafter. *Id.* Weir returned to health services, telling Nurses Howard and Chano that he was in tremendous pain, but neither would examine him or put his surgery back on the schedule. *Id.*

On April 24, Weir returned to the orthopedic surgeon. *Id.* After another X-ray, the surgeon told him that the foot had not healed properly and that surgery was the only option. *Id.* Weir asked about the cancelled first surgery and the orthopedic surgeon said that he was not the one who had cancelled it. *Id.* The surgery took place on August 23, 2018, and resulted in nine screws and a permanent rod being placed in Weir's foot.[1] *Id.* at 5. FCIO staff then forgot to schedule him to have his stitches removed, resulting in the procedure being done at 24 days after his operation rather than the recommended ten to twelve. *Id.* at 16. As a result, the wound was scabbed over by the time stitches were removed and the procedure was "extremely painful[]." *Id.* at 16. After the surgery, Weir complains, he is permanently disabled and struggles with chronic pain. *Id.* at 6–7.

---

[1] Weir also states that, on May 1, 2018, he was hit with a lock in his left eye and diagnosed by CT scan with three fractures to his eye socket. Doc. 6, att. 1, p. 4. He was then hospitalized briefly. *Id.* He does not complain of any complications or inadequate treatment, so it is unclear what relevance these allegations have to his *Bivens* suit.

Weir now brings suit against FCIO medical personnel Dr. Joel Alexandre, Rashawda Moody, Heather Howard, and Nurse Chano, as well as the following FCIO and BOP administrative staff: Warden R. Myers, Warden J.S. Willis, and Regional Director J.F. Caraway. Finally, in the civil coversheet to his original deficient complaint, he names the United States as a party. He complains of the lack of ladder access to top bunks, as well as the delays in treatment at FCIO and the resulting complications of his injury and extension of his pain and suffering. As a result, he seeks compensatory damages and injunctive relief to have ladders remounted to all the bunk beds. Doc. 6, p. 4.

## II.
### LAW & ANALYSIS

*A. Frivolity Review*

Weir has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d at 1025 (failure to state a claim).

## B. Section 1983/Bivens

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. A *Bivens* action is the counterpart for those acting under color of federal law of a suit brought under § 1983.[2] *E.g.*, *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir. 1993). In order to hold the defendant liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 108 S. Ct. 2250, 2254–55 (1988).

## C. Theories of the Complaint

### 1. Eighth Amendment standards

"[T]he treatment a prisoner receives in prison and the conditions und under which he is confined are subject to scrutiny under the Eighth Amendment." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). Accordingly, the Eighth Amendment imposes on prison officials a duty to ensure that inmates' basic needs, including medical care, are met. *Farmer v. Brennan*, 114 S.Ct. 1970, 1976 (1994). It also obliges officials to "take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotations omitted).

To show a violation under this theory, the inmate must allege a sufficiently serious deprivation and a sufficiently culpable state of mind on the part of the prison official – that is, that the official acted with deliberate indifference to inmate health or safety. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). Under this theory, a prison official is not liable unless he both knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 114 S.Ct. at 1977–79.

---

[2] *Bivens*, however, is more limited in scope than an action under § 1983 and has only been expressly extended to Fourth, Fifth, and Eighth Amendment violations. *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017); *see also Butts v. Martin*, 877 F.3d 571, 587–88 (5th Cir. 2017).

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind;" thus the test is "[s]ubjective recklessness" as used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (quoting *Farmer*, 114 S.Ct. at 1980).

A plaintiff cannot prevail on a claim of deliberate indifference relating to health care unless he shows that a federal actor "denied him treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). While a disagreement about the appropriate treatment is generally insufficient to show deliberate indifference, denial of recommended treatment or a delay in medical treatment that results in substantial harm can meet this standard. *See id.* at 538–40 (finding deliberate indifference based on prison's failure to follow recommended course of treatment for plaintiff's fractured teeth). As for general safety risks, the Fifth Circuit provides the following guidance:

> There is no concise definition of what types of prison conditions pose a substantial risk of serious harm under the Eighth Amendment. Instead, we examine this component of the test contextually, making sure to be responsive to contemporary standards of decency. We must consider whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.

*Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995) (footnotes and internal quotations omitted). A plaintiff may rely on circumstantial evidence to show the defendant's knowledge of such a risk, if he can show that the risk was so significant that the defendant must have been aware of it. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

Weir sufficiently states a claim against FCIO personnel, to the extent that he claims their delays in approving the recommended treatment resulted in significant complications and permanent disability. To the extent his claims relate to the minimal delay before his X-ray and the delay in having his stitches removed, however, these do not involve a "substantial risk of serious

harm." Accordingly, Weir cannot show a sufficiently culpable state of mind to amount to deliberate indifference for the actors responsible for these events. As for the allegations relating to ladder-less bunks, this court and others hold that claims regarding bunk access and similar hazards sound in negligence only and do not amount to a constitutional violation. *See Jones v. La. Dep't of Pub. Safety and Corrections*, 2009 WL 1310940, at *2 (W.D. La. May 11, 2009) (collecting cases). Accordingly, Weir should amend his petition to dismiss these claims, as well as his request for injunctive relief relating to the bunks, and identify the defendants he believes are directly responsible for the cancellation/delay of his surgery. He may instead pursue the dismissed claims through an action filed against the United States under the Federal Tort Claims Act.

### 2. *Supervisory liability*

Weir names as defendants three individuals (Warden R. Myers, Warden J.S. Willis, and Regional Director J.F. Caraway) who appear to have only supervisory responsibility over his medical care, at most. Vicarious liability does not apply in a *Bivens* suit, and so "the plaintiff . . . must plead that each Government-official defendant, through his own actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). Weir must plead adequate facts to support a finding of deliberate indifference for each of these defendants or dismiss his claims against them.

### 3. *United States as party*

In the civil cover sheet for his deficient first complaint, Weir also named the United States as a defendant. Doc. 1, att. 1. He does not mention the government as a party in his corrected complaint or memorandum. *See* doc. 6; doc. 6, att. 1. Accordingly, the court assumes that Weir is voluntarily dismissing any claims against the United States and we will direct the clerk to remove the party. In the event Weir does wish to maintain claims against the United States, he is advised

that he may only do so through one of the government's limited waivers of sovereign immunity – in this instance, through a complaint filed under the Federal Tort Claims Act.

## III.
### CONCLUSION

Weir must amend his complaint to address the deficiencies described above, and to dismiss the claims that cannot be cured through amendment.

Accordingly,

**THE CLERK IS DIRECTED** to mail a copy of this order to Weir at his last address on file.

**IT IS ORDERED** that Weir amend his complaint within **thirty (30) days** of the filing of this order to cure the deficiencies as outlined above.

Failure to comply with this order may result in dismissal of the claims above under Rule 41(b) of the Federal Rules of Civil Procedure. *See Link v. Wabash R. Co.*, 82 S. Ct. 1386 (1962).

Weir is further required to notify the court of any change in his address under LR 41.3. Failure to do so will result in a recommendation that this action be dismissed without prejudice.

THUS DONE AND SIGNED in Chambers this 13th day of November, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE